1

2

3

4

5

6                    # UNITED STATES DISTRICT COURT

7                         EASTERN DISTRICT OF CALIFORNIA

8

9    RENO RIOS,                              Case No.  1:14-cv-00520-BAM-PC

                  Plaintiff,                 ORDER DISMISSING CLAIMS
10
              v.                             ORDER REQUIRING PLAINTIFF TO
11                                           EITHER FILE  SECOND AMENDED
     C. GIPSON, et al.,                      COMPLAINT OR NOTIFY COURT OF
12                                           WILLINGNESS TO PROCEED ONLY ON
                  Defendants.                COGNIZABLE CLAIMS
13

14                                           THIRTY-DAY DEADLINE

15

16          Plaintiff is a state prisoner proceeding pro se and in forma pauperis pursuant to 42 U.S.C.

17   § 1983.  Plaintiff has consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).[1]

18   Currently before the Court is Plaintiff's May 20, 2016, first amended complaint, filed in response

19   to the February 16, 2016, order, dismissing the original complaint with leave to amend. (ECF

20   No. 14.)

21                                          **I.**

22                            **SCREENING REQUIREMENT**

23          The Court is required to screen complaints brought by prisoners seeking relief against a

24   governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).

25   The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are

26   legally "frivolous or malicious," that "fail to state a claim on which relief may be granted," or

27   that "seek monetary relief against a defendant who is immune from such relief."  28 U.S.C. §

28   _____
     [1] Plaintiff filed a consent to proceed before a magistrate judge on May 9, 2014. (ECF No. 4.)

1  1915(e)(2)(B).

2      A complaint must contain "a short and plain statement of the claim showing that the

3  pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not

4  required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

5  conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citing Bell

6  Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate

7  that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v.

8  Williams, 297 F.3d 930, 934 (9th Cir.2002).

9      Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings

10 liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d

11 1113, 1121 (9th Cir. 2012)(citations omitted). To survive screening, Plaintiff's claims must be

12 facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer

13 that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss

14 v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant

15 has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's

16 liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572

17 F.3d at 969.

18                                **II.**

19               **COMPLAINT ALLEGATIONS**

20     Plaintiff, an inmate in the custody of the California Department of Corrections and

21 Rehabilitation (CDCR) at Kern Valley State Prison, brings this civil rights action against

22 Defendant correctional officials employed by the CDCR at Corcoran State Prison. Plaintiff

23 names the following individual defendants: Warden Connie Gipson; Captain T. Campbell;

24 Lieutenant A. Johnson; Lt. W. Brodie; Lt. S. Pina; Sergeant M. Cuevas; Sgt. J. C. Garcia;

25 Correctional Officer (C/O) Hiracheta; Correctional Counselor (CCII) D. Goree; CCII A. Pasillas;

26 Institutional Gang Investigator (IGI) J. Ortega; IGI A. Mayo. Plaintiff's claims stem from his

27 classification as a validated gang member. In the order dismissing the original complaint, the

28 Court noted that Plaintiff stated a claim for relief against Defendants Gipson, Mayo, Ortega,

Garcia, and Pina for due process violations regarding his gang validation.  Plaintiff failed to state a claim for being unlawfully charged with a rules violation.

Plaintiff alleges that on July 26, 2006, he was originally validated as an associate member of the Mexican Mafia (EME) prison gang.  Plaintiff alleges that this was done without due process and in retaliation for filing inmate grievances.  Plaintiff alleges that pursuant to the applicable regulations, he met the criteria for inactive review on the ground that, for a period of six years,  there was no reliable gang activity information that would justify he retention in the Security Housing Unit (SHU).

Plaintiff alleges that on August 23, 2010, Defendant IGI Assistant Mayo authored a confidential memorandum, indicating that while working in the Corcoran SHU, he intercepted a manila envelope that inmates Berry and Dominguez were passing to each other.  The manila envelope included an "outside note" address to "all in good standing."  (ECF No. 14 ¶ 22.) Inside the manila envelope, Mayo discovered a CDCR Form 602 group appeal, including signatures from inmates that supported the appeal.  The appeal related to SHU conditions.  May indicated that because the grievance was addressed to "all in good standing" it means that "all inmates who signed the CDCR-602 group grievances were in good standing with the Mexican Mafia (EME) prison gang to commit criminal activities." (Id. ¶ 23.)   On the same date, Mayo filed a confidential memorandum in each inmate's central file "in retaliation for signing the alleged CDCR-602 group appeal because inmates were challenging the CSP-COR-SHU, harsh conditions." (Id. ¶ 24.)

On October 2, 2012, Lt. Pina was assigned as the Institution Gang Investigator (IGI) by Defendant Warden Gipson.  On the same date, Lt. Pina assigned Defendant Ortega to assist him. Ortega was assigned by Lt. Pina to disclose any confidential information that constituted gang activity within the past six years that Plaintiff was in the SHU.  On October 2, 2012, Ortega disclosed the fact that Mayo had filed a confidential memorandum in his file regarding the group appeal.  Plaintiff alleges that Ortega abused his discretion by failing to accurately disclose all information to "adequately rebut such entries." (Id., ¶ 33.)

On October 4, 2012, Ortega told Plaintiff that Lt. Pina did not have time to conduct a

1   hearing within 24 hours, and that Plaintiff would be re-validated as a prison gang associate

2   because he signed the group appeal.   Ortega told Plaintiff that "such inmates rebuttals were

3   never considered by the OCS in charge to validate inmates because they never comment or

4   reply." (Id. ¶ 34.)   Plaintiff explained to Ortega that he needed to talk to Lt. Pina to explain

5   why the information that was submitted to validate him was fabricated.

6       On October 18, 2012, Plaintiff filed an inmate grievance (CDCR Form 602) against

7   Defendants Pina, Ortega, and Mayo for using fabricated information on which to validate

8   Plaintiff's gang affiliation.   On November 15, 2012, Sergeant Garcia interviewed Plaintiff

9   regarding his grievance.   Plaintiff explained to Sgt. Garcia that he was at the SHU law library

10  when he signed the group appeal.   Plaintiff told Garcia that Defendants Pina, Ortega and Mayo

11  altered their report, and refused to provide Plaintiff with information that Plaintiff could have

12  used to rebut the allegations.   Garcia told Plaintiff that no matter what Plaintiff says, the IGI

13  would not consider his evidence.   Sgt. Garcia told Plaintiff that he was not the only inmate who

14  was validated as a result of the group appeal, that several other inmates were re-validated as a

15  result of the group appeal.

16      On November 1, 2012, at his ICC hearing, Defendants Pina, Ortega, and Mayo elected to

17  retain Plaintiff in the SHU.   Plaintiff alleges that Defendants denied his request to call witnesses,

18  or to have an Investigative Employee to assist in his defense.   Plaintiff filed another inmate

19  grievance regarding this decision.

20      On January 7, 2013, Plaintiff was interviewed by Defendant Pasillas regarding his

21  grievance.   Pasillas told Plaintiff that the ICC could not correct the IGI's actions, as the only way

22  to be released from the SHU would be to debrief.   Plaintiff was told that inmates were not

23  allowed to call witnesses at ICC reviews, because the reviews were meaningless.   Pasillas told

24  Plaintiff that inmates must serve six years before they are eligible for inactive review, and that he

25  could not do anything for Plaintiff because Plaintiff had filed several grievances and civil

26  actions, and "inmates like Plaintiff should be kept in the SHU until they debrief." (Id. ¶ 44.)

27      Plaintiff alleges that he was subjected to retaliation.   Specifically, Plaintiff alleges that he

28  was subjected to constant cell searches because of inmate grievances that he filed.   Plaintiff also

1  alleges that as a result of his complaints, Lt. Brodie ordered staff to place Plaintiff on single cell

2  status.  Lt. Brodie placed Plaintiff in single cell status "because institutional gang investigators

3  alleged that they had received anonymous note by correctional counselor A. Banks-

4  Graves at which Defendants J. Ortega and A. Pasillas could not found any reliable information

5  which justified their action in regard to the anonymous note."  (Id. ¶ 45.)

6          Once Plaintiff was placed on single cell status, he was subjected to harsh conditions.

7  Plaintiff alleges that he was "without water for approximately two weeks," and that he was fed

8  "constantly imitation flavored food served every day."  (Id. ¶ 45.)    Plaintiff alleges that there

9  was minimum access to the law library, recreation, yard programs, laundry, showers, cleaning,

10  and ventilation.  Plaintiff alleges that these harsh conditions were imposed against him and other

11  inmates in retaliation for their refusal to debrief.  Plaintiff alleges that the inmates had no other

12  remedy to challenge their conditions other than a refusal to eat.

13          Plaintiff alleges that in response to the hunger strike, Defendants Johnson, Cuevas, and

14  Hiracheta issued retaliatory counseling chronos (CDCR Form 128A) and a Rules Violation

15  Report (RVR).  Plaintiff disagreed with the regulations that define a hunger strike as refusing

16  nine consecutive meals, and indicated that he consumed food that he had purchased from the

17  canteen.  Plaintiff alleges that the information in the chrono was fabricated, as he was never

18  interviewed or asked why he refused meals.   Plaintiff was not provided with an IE to assist him

19  with collecting evidence to prepare a defense.  On July 22, 2013, Lt. Brodie conducted the

20  hearing on the RVR.  Plaintiff alleges that Lt. Brodie denied his request to call witnesses and

21  present evidence in his defense.

22                                              **III.**

23                                        **DISCUSSION**

24          **A.      Gang Validation**

25          As noted, Plaintiff's original complaint stated a claim for relief against Defendants

26  Warden Gipson, Lt. Mayo, Lt. Pina,  IGI Ortega, Sergeant Garcia  for improper gang validation

27  based on falsified information.   The Court noted that Plaintiff sufficiently alleged that

28  Defendants Warden Gipson, IGI Lt. Mayo, IGI Ortega, IGI Sergeant Garcia, Lt. Pina had

1  predetermined that Plaintiff would be re-validated based upon a refusal to de-brief.  Plaintiff re-
2  states these allegations in the first amended complaint.  For the reasons noted in the February 16,
3  2016, order, the first amended complaint states a claim against these Defendants for improper
4  gang validation.

5       As to the remaining Defendants, in the February 16, 2016, order, Plaintiff was advised
6  that the statute under which this action proceeds requires that there be an actual connection or
7  link between the actions of the defendants, and the deprivation alleged to have been suffered by
8  the plaintiff.  See Monell v. Dept. of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423
9  U.S. 362 (1976).   The Ninth Circuit has held that "[a] person 'subjects' another to the
10  deprivation of a constitutional right, within the meaning of section 1983, if he does an
11  affirmative act, participates in another's affirmative acts, or omits to perform an act which he is
12  legally required to do that causes the deprivation of which complaint is made."   Johnson v.
13  Duffy, 588 F.2d 740, 743 (9th Cir. 1978).   (ECF No. 9 at 8:3-10.)   Plaintiff fails to correct this
14  deficiency in the first amended complaint.  Based upon the allegations in Plaintiff's original and
15  first amended complaint, the Court is persuaded that Plaintiff is unable to allege any additional
16  facts that would support a claim for improper gang validation by Defendants Campbell, Johnson,
17  Brodie, Cuevas, Hiracheta, Goree, and Pasillas, and further amendment would be futile.  See
18  Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013) ("A district court may deny leave to
19  amend when amendment would be futile.")   Based on the nature of the deficiencies at issue, the
20  Court finds that further leave to amend is not warranted.  Lopez v. Smith, 203 F.3d 1122, 1130
21  (9th. Cir. 2000); Noll v. Carlson, 809 F.2d 1446-1449 (9th Cir. 1987).   Plaintiff's improper gang
22  validation claim as to these Defendants should therefore be dismissed for failure to state a claim
23  upon which relief could be granted.

24       **B.     Rules Violation Report**

25       Plaintiff's claims that he was unlawfully charged with a serious rules violation report in
26  retaliation because he refused meals.  Plaintiff's central claim is that he was falsely convicted.  It
27  is unclear whether Plaintiff suffered the loss of any credits as a result of his disciplinary charge.

28       State prisoners may not challenge the fact or duration of their confinement in a section

1983 action and their sole remedy lies in habeas corpus relief. <u>Wilkinson</u>, 544 U.S. at 78. Often referred to as the favorable termination rule, this limitation applies whenever state prisoners "seek to invalidate the duration of their confinement – either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the state's custody." <u>Id.</u> at 81, <u>Heck v. Humphrey</u>, 512 U. S. 477 (1994). Accordingly, "a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – if success in that action would necessarily demonstrate the invalidity of confinement or its duration." <u>Id.</u> at 81-82. The favorable termination rule applies to prison disciplinary proceedings if those proceedings resulted in the loss of good-time or behavior credits. <u>Edwards v. Balisok</u>, 520 U.S. 641, 646-68 (1997).

Here, the allegations indicate that the charges were filed against Plaintiff in retaliation and that officials conspired to violate Plaintiff's rights by failing to consider evidence and witnesses. A favorable finding on this claim would necessarily imply the invalidity of Plaintiff's conviction. There are no allegations that Plaintiff's disciplinary conviction has been reversed, expunged, or otherwise invalidated. Further, it is unclear whether Plaintiff was assessed any loss of credits or any punishment that affected the length of his sentence. Plaintiff was advised of this deficiency in the order dismissing the original complaint. (ECF No. 9 at 9:5-8.) Plaintiff fails to correct this deficiency in the first amended complaint. An allegation that Plaintiff was not allowed to call witnesses or to present evidence in his defense necessarily implies the invalidity of Plaintiff's conviction. In the first amended complaint, Plaintiff does not allege that his conviction was reversed, expunged, or otherwise invalidated. Further, Plaintiff was specifically advised that the complaint was vague as to whether Plaintiff suffered the loss of any credits as a result of his disciplinary conviction. Plaintiff fails to correct this deficiency in the first amended complaint. Plaintiff does not allege what punishment was imposed, or whether it resulted in the loss of any credits. Based upon the allegations in Plaintiff's original and first amended complaint, the Court is persuaded that Plaintiff is unable to allege any additional facts that would

1  support a claim for an illegal rules violation hearing, and further amendment would be futile.

2  See Hartmann , 707 F.3d at 1130.   Based on the nature of the deficiencies at issue, the Court

3  finds that further leave to amend is not warranted.   Lopez, 203 F.3d at 1130; Noll, 809 F.2d at

4  1446-1449.   Plaintiff's claims regarding due process violations at his disciplinary hearing are

5  therefore dismissed for failure to state a claim upon which relief could be granted.

6       **C.     Retaliation**

7       A plaintiff may state a claim for a violation of his First Amendment rights due to

8  retaliation under section 1983.   Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).   A viable

9  claim of retaliation in violation of the First Amendment consists of five elements:   "(1) an

10  assertion that a state actor took some adverse action against an inmate (2) because of (3) that

11  prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First

12  Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."

13  Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005); accord Watison v. Cartier, 668 F.3d

14  1108, 1114 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

15       **1.   Hunger Strike**

16       In the order dismissing the original complaint, Plaintiff was advised that to the extent that

17  he set forth a claim of retaliation for engaging in a hunger strike, such a claim was inconsistent

18  with a claim that Plaintiff was not in fact participating in a hunger strike.   Though participating

19  in a hunger strike can, in certain circumstances, constitute activity protected by the First

20  Amendment, the basis of Plaintiff's claim appeared to be that he was not participating in a

21  hunger strike, but falsely charged with participating in a hunger strike.   Plaintiff's retaliation

22  claim was therefore dismissed with leave to file an amended complaint in which he alleges that

23  he was in fact participating in a hunger strike.   Liberally construed, the first amended complaint

24  alleges that Plaintiff was participating in a hunger strike to protest Defendants' policy of

25  retaining him in the SHU in order to get him to debrief, and that he was charged with a serious

26  rules violation in retaliation for  participating in the hunger strike.   Plaintiff therefore states a

27  claim for relief against Defendants Johnson, Cuevas, and Hiracheta for retaliating against

28  Plaintiff for participation in a hunger strike in violation of the First Amendment.

### 2.   Conditions of Confinement

Plaintiff alleges that he and other inmates were subjected to harsh conditions of confinement "in retaliation because 4B facility 4R building was assigned to house only gang validated inmates to enforce them to debrief." (ECF No. 14, ¶ 45.)  The Court finds this allegation fails to state sufficient factual matter to assert a claim.  As noted above, Plaintiff must link each individual defendant with specific conduct that deprived Plaintiff of a protected interest.  Johnson, 588 F.2d at 743.  A bare allegation that defendants in general subjected Plaintiff to unconstitutional conditions of confinement because he was in a housing unit where inmates were "enforced to debrief" is insufficient to state a claim for retaliation.  There are no facts alleged indicating that any of the named Defendants caused any of the specific conditions that Plaintiff complained of, or any facts suggesting that a particular condition of Plaintiff's confinement was imposed on him in response to Plaintiff's exercise of a protected activity.  Plaintiff's retaliation claim regarding the conditions of his confinement should therefore be dismissed.  Because Plaintiff raises this claim for the first time in the first amended complaint, he will be granted an opportunity to file a second amended complaint that cures this defect.

Regarding any challenge to the conditions of confinement imposed on Plaintiff while in the SHU on Eighth Amendment grounds, he is advised of the following legal standards for an Eighth Amendment conditions of confinement claim.

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement.  Farmer v. Brennan, 511 U.S. 825 (1994); Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006).  "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation.  Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000).  Rather, extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.  Farmer, 511 U.S. at 834; Hudson v. McMillian, 503 U.S. 1, 9 (1992).  In order to state a claim, Plaintiff must allege facts sufficient to show that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff.  Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144,

1150-51 (9th Cir. 2010); <u>Richardson v. Runnels</u>, 594 F.3d 666, 672 (9th Cir. 2010).

## IV.

### CONCLUSION AND ORDER

Plaintiff's first amended complaint states a cognizable claim against Defendants Gipson, Mayo, Ortega, Garcia and Pina for due process violations regarding his gang validation, and against Defendants Johnson, Cuevas, and Hiracheta for retaliating against Plaintiff for engaging in a hunger strike.  Plaintiff's claims regarding due process violations at his disciplinary hearing are dismissed, without leave to amend, for failure to state a claim upon which relief could be granted.  Plaintiff's gang validation claims against Defendants Campbell, Johnson, Brodie, Cuevas, Hiracheta, Goree, and Pasillas are dismissed, without leave to amend, for failure to state a claim upon which relief could be granted.  The Court will provide Plaintiff with the opportunity to file an amended complaint regarding his conditions of confinement,  curing the deficiencies identified by the Court in this order.  <u>Noll v. Carlson</u>, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

If Plaintiff does not wish to file an amended complaint and is agreeable to proceeding only against Defendants Gipson, Mayo, Ortega, Garcia and Pina on his due process gang validation claim and against Defendants Johnson, Cuevas, and Hiracheta on his retaliation claim, Plaintiff may so notify the Court in writing.  The other defendants and claims will then be dismissed for failure to state a claim.  Plaintiff will then be provided eight summons and eight USM-285 forms for completion and return.  Upon receipt of the forms, the Court will direct the United States Marshal to initiate service of process on Defendants Gipson, Mayo, Ortega, Garcia, Pina, Johnson, Cuevas and Hiracheta.

If Plaintiff elects to amend, his amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, <u>Iqbal</u>, 556 U.S. at 678-679; <u>Jones</u>, 297 F.3d at 934. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . <u>Twombly</u>, 550 U.S. at 555 (citations omitted).   The mere possibility of misconduct is insufficient to state a claim.  <u>Iqbal</u>, 556 U.S. at 678.  Further,

Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. <u>George v. Smith</u>, 507 F.3d 1467, 1474 (7th Cir. 2007)(no "buckshot" complaints).

Finally, an amended complaint supersedes the original complaint, <u>Forsyth v. Humana, Inc.</u>, 114 F.3d 1467, 1474 (9th Cir. 1997); <u>King v. Atiyeh</u>, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.

Based on the foregoing, IT IS HEREBY ORDERED that:

1.    The Clerk's Office shall send to Plaintiff a civil rights complaint form;

2.    Plaintiff's claims regarding due process violations at his disciplinary hearing are dismissed, without leave to amend, for failure to state a claim upon which relief could be granted;

3.    Plaintiff's gang validation claims against Defendants Campbell, Johnson, Brodie, Cuevas, Hiracheta, Goree, and Pasillas are dismissed, without leave to amend, for failure to state a claim upon which relief could be granted;

4.    Within **thirty (30) days** from the date of service of this order, Plaintiff must either:

a.    File a second amended complaint curing the deficiencies identified by the Court in this order, or

b.    Notify the Court in writing that he does not wish to file a second amended complaint and is willing to proceed only against Defendants Gipson, Mayo, Ortega, Garcia and Pina on his due process gang validation claims and against Defendants Johnson, Cuevas, and Hiracheta on his retaliation claim; and

5.    If Plaintiff fails to comply with this order, this action will be dismissed for failure to prosecute and to obey a court order.

IT IS SO ORDERED.

Dated:   __**October 18, 2016**__          _____/s/ *Barbara A. McAuliffe*_____

UNITED STATES MAGISTRATE JUDGE

11