UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENO FUENTES RIOS,<br><br>                Plaintiff,<br><br>    v.<br><br>CONNIE GIPSON, et al.,<br><br>                Defendants. | Case No. 1:14-cv-00520-BAM (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN A DISTRICT JUDGE<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS<br>(ECF No. 25)<br><br>**FOURTEEN-DAY DEADLINE** |

Plaintiff Rene Fuentes Rios ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis pursuant to 42 U.S.C. § 1983.

**I.    Procedural Background**

Plaintiff initiated this action on April 14, 2014. (ECF No. 1.) On February 16, 2016, the Court screened Plaintiff's complaint and found that it stated a cognizable claim against Defendants Gipson, Mayo, Ortega, Garcia and Piña for due process violations regarding his gang validation, but failed to state any other claims for relief. Plaintiff was granted leave to cure the identified deficiencies, and was directed to either file a first amended complaint or notify the Court that he was agreeable to proceeding only on the due process gang validation claim. (ECF No. 9.)

1

On May 20, 2016, Plaintiff filed a first amended complaint. (ECF No. 14.)

On October 18, 2016, the Court screened Plaintiff's first amended complaint, and found that it stated a cognizable claim against Defendants Gipson, Mayo, Ortega, Garcia and Piña for due process violations regarding his gang validation, and against Defendants Johnson, Cuevas and Hiracheta for retaliating against Plaintiff for engaging in a hunger strike. (ECF No. 17.) Certain other claims were dismissed without leave to amend, but Plaintiff was granted leave to file a second amended complaint to attempt to cure deficiencies related to his claim that he was subjected to harsh conditions of confinement in retaliation for protected activity. (Id. at p. 10.) Plaintiff was directed to either file a second amended complaint or notify the Court that he was willing to proceed only on the cognizable claims identified by the Court. (Id. at p. 11.)

Plaintiff's second amended complaint, filed on February 3, 2017, is currently before the Court for screening. (ECF No. 25.)

**I.      Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc*., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings

liberally construed and to have any doubt resolved in their favor. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (quotation marks omitted); *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (quotation marks omitted); *Moss*, 572 F.3d at 969.

## II. <u>Allegations</u>

Plaintiff is an inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR") at California State Prison, Corcoran ("Corcoran"), where the events in the complaint are alleged to have occurred. Plaintiff names the following defendants: (1) Warden Connie Gipson; (2) Lieutenant S. Piña; (3) Correctional Officer J. C. Garcia; (4) Correctional Officer J. Ortega; (5) Correctional Officer A. Mayo; (6) Captain T. Campbell; (7) Lieutenant J. V. Johnson; (8) Sergeant M. Cuevas; (9) Correctional Officer J. Hiracheta; (10) Correctional Counselor D. Goree; and (11) Appeals Coordinator A. Pasillas.

<u>Allegations Regarding Plaintiff's Gang Validation</u>

On July 26, 2006, Plaintiff was originally validated by prison officials as a Mexican Mafia (EME) prison gang associate. He was placed in solitary confinement–Security Housing Unit (SHU) to serve six years before he could qualify for inactive review and release from the SHU. On February 15, 2007, Plaintiff was housed in the Corcoran SHU in a building where only prison gang validated inmates were housed.

On August 23, 2010, Defendant A. Mayo allegedly fabricated a confidential memorandum, asserting that while working in the SHU, he intercepted a manila envelope that Inmate Berry passed from his cell to Inmate Dominguez. Plaintiff alleges that this memorandum was placed in his prison file in retaliation for his signing of a group CDCR 602 grievance submitted by Inmate Roy Dominguez challenging SHU conditions. Defendant A. Mayo reportedly confiscated the CDCR 602 grievance and filed confidential memoranda against all

inmates that signed the grievance in order to stop the filing of grievances and to revalidate inmates as gang associates for retention in the SHU.

On May 17, 2012, Plaintiff attended a Classification Committee (ICC) for a 180-day review regarding his original validation. Plaintiff informed Defendant Gipson about his inactive review date of June 1, 2012, so that he could be recommended for inactive review. Defendant Gipson ignored Plaintiff and alleged that he was endorsed for transfer to Pelican Bay State Prison for filing too many 602 grievances and protesting SHU conditions. Plaintiff asserts that Defendant Gipson retaliated against him for protesting the SHU conditions and for filing 602 grievances. Plaintiff further alleges that Defendant Gipson violated his due process rights by retaining him beyond the eligible date for inactive review.

On October 2, 2012, Defendant J. Ortega disclosed to Plaintiff the confidential memorandum entry that Defendant Mayo filed, but refused to describe the reliability of the entry and failed to provide a copy of the CDCR 602 group appeal, the alleged note found outside the manila envelope or the manila envelope. Defendant J. Ortega disclosed the CDCR-1030 Confidential Information Disclosure Form and indicated that in less than 24 hours Defendant S. Piña would interview Plaintiff.

Defendant Piña was assigned by the Warden to be the Institutional Gang Investigator (IGI) in charge of interviewing inmates. Defendant Piña did not interview Plaintiff before submitting the gang validation package to the Office of Correctional Safety (OCS). Plaintiff alleges that Defendant Piña knew that the information offered for re-validation violated Plaintiff's due process rights under CDCR regulations. Plaintiff further alleges that Defendants Gipson and Piña violated his rights by not issuing a new CDCR-114-D describing their reasons for retaining Plaintiff beyond June 1, 2012 and for not conducting a hearing within 24 hours as required by regulations before retaining him in the SHU and recommending him for prison gang validation.

On October 4, 2012, Defendant J. Ortega approached Plaintiff's cell and indicated that Defendant Piña could not conduct the 24-hour hearing because he did not have time for Plaintiff. Defendant Ortega told Plaintiff to write a response and he would give it to Defendant Piña.

4

Plaintiff explained to Defendant Ortega that due to the conflict of interest regarding the retaliatory entry, Plaintiff needed to talk to Defendant Piña to explain why he could not have a copy of the alleged group appeal and the note, which indicated "to all in good standing." (Doc. No. 25 at p. 14.) Plaintiff indicated that he did not want to be interviewed by Defendant Ortega. Defendant Ortega said that Plaintiff had no choice other than to give a response to him regarding the CDCR-1030 or he would not submit anything. Plaintiff asked Defendant Ortega to record the rebuttal in the CDCR-128-B to ensure that it would be considered. Defendant Ortega indicated that OCS never replied or considered inmates' rebuttals. Plaintiff then explained that it was very important that he talk to Defendant Piña and that he have a copy of the alleged evidence to prepare a good defense.

On November 15, 2012, Defendant J.C. Garcia was assigned to interview Plaintiff regarding a 602 grievance, Log # COR-12-06953. Defendant Garcia allegedly refused to consider and attach Plaintiff's evidence because Plaintiff had filed 602 grievances against other officers. Plaintiff presented the evidence to Defendant Garcia and clearly explained that on October 11, 2012, CDCR changed the policy and procedures regarding the information used to revalidate inmates as a prison gang. Defendant Garcia alleged that several other inmates already got validated based on the same information and that they would make sure to revalidate Plaintiff until he was willing to debrief. Plaintiff explained that all inmates who signed the grievance were gang validated as they were housed in the same building where only gang validated inmates were housed.

On May 14, 2013, Defendant Piña resubmitted the gang validation package to the OCS for approval. Defendant Ortega disclosed unreliable CDCR-1030 form dated June 3, 2013, alleging that staff received an anonymous note indicating that Plaintiff may be targeted for assault by the EME prison gang. For this reason, Plaintiff was housed in isolation single cell, which was defective and without water for approximately two weeks. Plaintiff could only drink water when he went to yard, during showers, or when staff passed in a plastic bag because the building maintenance required a work order from the officers before the sink could be fixed.

On November 15, 2013, the Departmental Review Board ("DRB") assigned Plaintiff's

case pursuant to the new pilot program for STG case-by-case review and found that the information used for gang validation was insufficient to retain him in the SHU. Plaintiff was recommended to be released to the mainline general population.

Allegations Regarding Inhumane SHU Conditions

From 2007 through 2013, Plaintiff filed approximately 35 CDCR grievances regarding SHU conditions and the unreliable appeals system. Plaintiff alleges that staff refused to provide sufficient ventilation, recreational yard, showers, law library, laundry, sufficient food, incomplete meals, food was overcooked, cold, and sometimes served in dirty trays. Nearly every day Plaintiff was served imitation sausage crumbles and chicken-flavored strips, which were 80% soy and made Plaintiff sick. At that point, Plaintiff refused to eat the food in 2011, 2012, and 2013 for several days to protest the inhumane conditions. Plaintiff contends that most of the 602 grievances were not logged, processed or answered by prison officials.

Inmates in the SHU were forced to endure bright light 24-hours a day because staff had the control to turn on and off the cell lights. Plaintiff alleges that while housed at the SHU, he filed several grievances against staff and SHU conditions with negative results. Plaintiff therefore had no choice but to participate in a hunger protest in a peaceful manner for his own reasons.

On December 1, 2008, Plaintiff filed a 602 appeal against SHU administrators for refusing to allow him to have control of the cell light. Plaintiff alleges that staff left the bright light on 24-hours to punish inmates. Plaintiff also complained that staff constantly refused to pass complete supplies, to provide hair/nail clippers, and clothing linen. Additionally, Plaintiff filed several other 602 grievances against administrators for constantly refusing to provide sufficient ventilation.

On August 31, 2011, Plaintiff filed a 602 grievance for administrators punishing Plaintiff with repetitive counseling chronos to affect his inactive gang validation status and possible release from the SHU merely because Plaintiff peacefully participated in a hunger protest against the SHU conditions. Plaintiff alleges that his 602 grievances were obstructed by prison officials.

On November 1, 2012, Plaintiff was attending the Institutional Classification Committee

(ICC) and "had discovered the constantly 180 day meaningless ICC, staff reviews and the retaliatory confidential information entries . . . to enforce [sic] plaintiff to debrief." (ECF No. 25 at 18.)

On November 26, 2012, Plaintiff filed a 602 grievance against ICC for refusing to disclose all confidential entries placed in his prison file because Plaintiff was supposed to be recommended for inactive review since June 1, 2012.

On January 7, 2013, Defendant Pasillas interviewed Plaintiff in regard to the 602 appeal. Defendant Pasillas alleged that the reason they conducted meaningless ICC reviews was to verify if Plaintiff was willing to debrief and that Plaintiff's due process right to a fair hearing or investigative employee at each 180-day was unnecessary. Defendant Pasillas refused to consider Plaintiff's evidence.

On January 7, 2013, Plaintiff requested from Defendant Pasillas a copy of the alleged 602 group appeal and information considered to retain him in the SHU. Defendant Pasillas denied his request.

Hunger Strike

On July 8, 2013, Plaintiff decided to participate in his third protest and refused to eat the SHU meals. On July 10, 2013, Defendants Campbell, Johnson, Cuevas, and Hiracheta issued retaliatory Rule Violation Report ("RVR") based on conjecture and speculation, and erroneously alleged that Plaintiff participated in a mass hunger strike. Plaintiff alleges that Defendants never interviewed him or asked why he refused meals, nor did they search his cell to determine if he was on a hunger strike or eating his own personal food. Plaintiff was not provided with an investigative employee to assist him with collecting evidence to prepare a defense. On July 22, 2013, Lt. Brodie conducted the hearing on the RVR. Plaintiff alleges that Lt. Brodie denied his request to present evidence in his defense.

On August 29, 2013, Defendant Goree was assigned to interview Plaintiff in regard to his grievance. Defendant Goree refused to record Plaintiff's additional evidence due to his participation in a mass hunger strike.

Plaintiff seeks compensatory and punitive damages, along with declaratory and injunctive

relief.

**III. Discussion**

    **A. Official Capacity**

Plaintiff names several defendants in their individual and official capacities. "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials in their official capacities." *Aholelei v. Dep't. of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted). Suits for injunctive relief are also generally barred. *See Nat'l Audubon Soc'y v. Davis*, 307 F.3d 835, 847 (9th Cir. 2002). However, the Eleventh Amendment does not bar suits seeking damages against state officials in their personal capacities, *Hafer v. Melo*, 502 U.S. 21, 30, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003), or suits for injunctive relief brought against state officials in their official capacities, *Austin v. State Indus. Ins. Sys.*, 939 F.2d 676, 680 n.2 (9th Cir. 1991).

Thus, Plaintiff may only proceed against any defendant for money damages in their individual capacity, but may proceed against defendants for injunctive relief in their official capacities.

    **B. Gang Validation**

As indicated, Plaintiff's original complaint stated a claim for relief against Defendants Gipson, Mayo, Pina, Ortega, and Garcia for improper gang validation based on falsified information. The Court noted that Plaintiff sufficiently alleged that these defendants had predetermined that Plaintiff would be re-validated based upon a refusal to de-brief. Plaintiff re-states these allegations in the second amended complaint, including the fabrication of confidential entries in his prison file and that Plaintiff would be re-validated until he was willing to debrief. For the reasons noted in the February 16, 2016, order, the first amended complaint states a claim against these Defendants for improper gang validation.

    **C. Retaliation**

A plaintiff may state a claim for a violation of his First Amendment rights due to retaliation under section 1983. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). A viable claim of retaliation in violation of the First Amendment consists of five elements: "(1) an assertion that

8

a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005); *accord Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

### 1. Hunger Strike

Liberally construed, the second amended complaint alleges that Plaintiff was participating in a hunger strike to protest his gang validation and harsh SHU conditions, and that he was charged with a serious rules violation in retaliation for participating in the hunger strike. Plaintiff therefore states a claim for relief against Defendants Johnson, Cuevas, and Hiracheta for retaliating against Plaintiff for participation in a hunger strike in violation of the First Amendment.

### 2. Revalidation

Plaintiff alleges, in part, that he was re-validated as a gang member and retained in the SHU in retaliation for signing a grievance challenging the inhumane SHU conditions. At the pleading stage, Plaintiff states a retaliation claim against Defendants Gipson, Mayo, Pina, Ortega, and Garcia.

### D. Grievance Procedure

Plaintiff complains about the processing and review of his grievances, including review by Defendant Goree. However, the existence of an inmate appeals process does not create a protected liberty interest upon which Plaintiff may base a claim that he was denied a particular result or that the appeals process was deficient. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988).

### E. Conditions of Confinement

"The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement." *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Prison officials therefore have a "duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir.

2000) (citations omitted). Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (citations and quotations omitted). A prisoner claiming an Eighth Amendment violation must show (1) that the deprivation he suffered was "objectively, sufficiently serious;" and (2) that prison officials were deliberately indifferent to his safety in allowing the deprivation to take place. *Morgan*, 465 F.3d at 1045, quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Plaintiff alleges that staff refused to provide sufficient ventilation, recreational yard, showers, law library, laundry, sufficient food, incomplete meals, food was overcooked, cold, and sometimes served in dirty trays. Plaintiff's general and conclusory allegations, without more, are insufficient to state a cognizable Eighth Amendment claim. Plaintiff fails to allege sufficient facts to demonstrate that the conditions he is complaining of are grave enough to form the basis of an Eighth Amendment claim. Plaintiff does not include facts regarding the circumstance, nature or duration of any claimed violation. More importantly, Plaintiff does not link any of the named defendants to his conditions of confinement claim, including that he was subjected to bright lights in 2008.

### F. Declaratory Relief

In addition to monetary damages, Plaintiff seeks a declaration that his rights were violated. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." *Eccles v. Peoples Bank of Lakewood Village*, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985).

In the event that this action reaches trial and the jury returns a verdict in favor of Plaintiff, that verdict will be a finding that Plaintiff's constitutional rights were violated. Accordingly, a declaration that any defendant violated Plaintiff's rights is unnecessary.

**IV. <u>Conclusion and Recommendation</u>**

Plaintiff has stated cognizable claims against (1) Defendants Gipson, Mayo, Pina, Ortega, and Garcia for improper gang validation in violation of the Due Process Clause and retaliation in violation of the First Amendment; and (2) Defendants Johnson, Cuevas, and Hiracheta for retaliating against Plaintiff for participation in a hunger strike in violation of the First Amendment However, Plaintiff has failed to state any other cognizable claims in this action. Despite being provided with the relevant pleading and legal standards, Plaintiff has been unable to cure the deficiencies identified by the Court. Thus, further leave to amend is not warranted. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, the Court HEREBY DIRECTS the Clerk of the Court to randomly assign a District Judge to this action.

Furthermore, for the reasons explained above, IT IS HEREBY RECOMMENDED as follows:

1. This action proceed on Plaintiff's claims against Defendants Gipson, Mayo, Pina, Ortega, and Garcia for improper gang validation in violation of the Due Process Clause and retaliation in violation of the First Amendment; and (2) Defendants Johnson, Cuevas, and Hiracheta for retaliating against Plaintiff for participation in a hunger strike in violation of the First Amendment; and

2. All other claims and defendants be dismissed for failure to state a cognizable claim for relief, including Plaintiff's request for declaratory relief.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the

specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **April 17, 2018**         /s/ *Barbara A. McAuliffe*
                                  UNITED STATES MAGISTRATE JUDGE