# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENO FUENTES RIOS, | Case No. 1:14-cv-00520-LJO-BAM (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION TO DISMISS |
| v. | |
| GIPSON, et al., | (ECF No. 39) |
| Defendants. | **FOURTEEN (14) DAY DEADLINE** |

**I.  Introduction**

Plaintiff Reno Fuentes Rios ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. This action currently proceeds on Plaintiff's second amended complaint against Defendants Gipson, Mayo, Piña, Ortega, and Garcia for improper gang revalidation in violation of the Due Process Clause and retaliation in violation of the First Amendment, and against Defendants Johnson, Cuevas, and Hiracheta for retaliating against Plaintiff for participation in a hunger strike in violation of the First Amendment.

On August 28, 2018, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). By this motion, Defendants seek to dismiss Plaintiff's due process claim relating to improper gang revalidation and his retaliation claim relating to his participation in a hunger strike, on the grounds that Defendants are entitled to qualified immunity as a matter

1

of law.[1] (ECF No. 39.) On October 9, 2018, Plaintiff opposed the motion, (ECF No. 42), and on October 12, 2018 he filed a request for judicial notice in support of his opposition, (ECF No. 43). Defendants filed a reply on October 16, 2018. (ECF No. 44.) The motion is deemed submitted. Local Rule 230(l).

For the reasons discussed below, the Court recommends that Defendants' motion to dismiss be granted.

## II. Summary of Relevant Allegations in the Second Amended Complaint

Plaintiff is an inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR") at California State Prison, Corcoran ("Corcoran"), where the events in the complaint are alleged to have occurred. Plaintiff names the following defendants: (1) Warden Connie Gipson; (2) Lieutenant S. Piña; (3) Correctional Officer J. C. Garcia; (4) Correctional Officer J. Ortega; (5) Correctional Officer A. Mayo; (6) Lieutenant A. V. Johnson; (7) Sergeant M. Cuevas; and (8) Correctional Officer J. Hiracheta.

<u>Allegations Regarding Plaintiff's Gang Revalidation</u>

On July 26, 2006, Plaintiff was originally validated by prison officials as a Mexican Mafia (EME) prison gang associate. He was placed in solitary confinement–Security Housing Unit (SHU) to serve six years before he could qualify for inactive review and release from the SHU. On February 15, 2007, Plaintiff was housed in the Corcoran SHU in a building where only prison gang validated inmates were housed.

On August 23, 2010, Defendant A. Mayo allegedly fabricated a confidential memorandum, asserting that while working in the SHU, he intercepted a manila envelope that Inmate Berry passed from his cell to Inmate Dominguez. Plaintiff alleges that this memorandum was placed in his prison file in retaliation for his signing of a group CDCR 602 grievance submitted by Inmate Roy Dominguez challenging SHU conditions. Defendant A. Mayo reportedly confiscated the CDCR 602 grievance and filed confidential memoranda against all inmates that signed the grievance in order to stop the filing of grievances and to revalidate

---

[1] Defendants do not challenge Plaintiff's retaliation claim arising out of Plaintiff's gang revalidation and retention in the SHU due to Plaintiff's participation in a group appeal.

2

inmates as gang associates for retention in the SHU.

On May 17, 2012, Plaintiff attended a Classification Committee (ICC) for a 180-day review regarding his original validation. Plaintiff informed Defendant Gipson about his inactive review date of June 1, 2012, so that he could be recommended for inactive review. Defendant Gipson ignored Plaintiff and alleged that he was endorsed for transfer to Pelican Bay State Prison for filing too many 602 grievances and protesting SHU conditions. Plaintiff asserts that Defendant Gipson retaliated against him for protesting the SHU conditions and for filing 602 grievances. Plaintiff further alleges that Defendant Gipson violated his due process rights by retaining him beyond the eligible date for inactive review.

On October 2, 2012, Defendant J. Ortega disclosed to Plaintiff the confidential memorandum entry that Defendant Mayo filed, but refused to describe the reliability of the entry and failed to provide a copy of the CDCR 602 group appeal, the alleged note found outside the manila envelope or the manila envelope. Defendant J. Ortega disclosed the CDCR-1030 Confidential Information Disclosure Form and indicated that in less than 24 hours Defendant S. Piña would interview Plaintiff.

Defendant Piña was assigned by the Warden to be the Institutional Gang Investigator (IGI) in charge of interviewing inmates. Defendant Piña did not interview Plaintiff before submitting the gang validation package to the Office of Correctional Safety (OCS). Plaintiff alleges that Defendant Piña knew that the information offered for re-validation violated Plaintiff's due process rights under CDCR regulations. Plaintiff further alleges that Defendants Gipson and Piña violated his rights by not issuing a new CDCR-114-D describing their reasons for retaining Plaintiff beyond June 1, 2012 and for not conducting a hearing within 24 hours as required by regulations before retaining him in the SHU and recommending him for prison gang validation.

On October 4, 2012, Defendant J. Ortega approached Plaintiff's cell and indicated that Defendant Piña could not conduct the 24-hour hearing because he did not have time for Plaintiff. Defendant Ortega told Plaintiff to write a response and he would give it to Defendant Piña. Plaintiff explained to Defendant Ortega that due to the conflict of interest regarding the retaliatory entry, Plaintiff needed to talk to Defendant Piña to explain why he could not have a copy of the

3

alleged group appeal and the note, which indicated "to all in good standing." (ECF No. 25, p. 14.) Plaintiff indicated that he did not want to be interviewed by Defendant Ortega. Defendant Ortega said that Plaintiff had no choice other than to give a response to him regarding the CDCR-1030 or he would not submit anything. Plaintiff asked Defendant Ortega to record the rebuttal in the CDCR-128-B to ensure that it would be considered. Defendant Ortega indicated that OCS never replied or considered inmates' rebuttals. Plaintiff then explained that it was very important that he talk to Defendant Piña and that he have a copy of the alleged evidence to prepare a good defense.

On November 15, 2012, Defendant J. C. Garcia was assigned to interview Plaintiff regarding a 602 grievance, Log # COR-12-06953. Defendant Garcia allegedly refused to consider and attach Plaintiff's evidence because Plaintiff had filed 602 grievances against other officers. Plaintiff presented the evidence to Defendant Garcia and clearly explained that on October 11, 2012, CDCR changed the policy and procedures regarding the information used to revalidate inmates as a prison gang. Defendant Garcia alleged that several other inmates already got validated based on the same information and that they would make sure to revalidate Plaintiff until he was willing to debrief. Plaintiff explained that all inmates who signed the grievance were gang validated as they were housed in the same building where only gang validated inmates were housed.

On May 14, 2013, Defendant Piña resubmitted the gang validation package to the OCS for approval. Defendant Ortega disclosed unreliable CDCR-1030 form dated June 3, 2013, alleging that staff received an anonymous note indicating that Plaintiff may be targeted for assault by the EME prison gang. For this reason, Plaintiff was housed in isolation single cell, which was defective and without water for approximately two weeks. Plaintiff could only drink water when he went to yard, during showers, or when staff passed in a plastic bag because the building maintenance required a work order from the officers before the sink could be fixed.

On November 15, 2013, the Departmental Review Board ("DRB") assigned Plaintiff's case pursuant to the new pilot program for STG case-by-case review and found that the information used for gang validation was insufficient to retain him in the SHU. Plaintiff was

recommended to be released to the mainline general population.

Hunger Strike

On July 8, 2013, Plaintiff decided to participate in his third protest and refused to eat the SHU meals. On July 10, 2013, Defendants Johnson, Cuevas, and Hiracheta issued a retaliatory Rule Violation Report ("RVR") based on conjecture and speculation, and erroneously alleged that Plaintiff participated in a mass hunger strike. Plaintiff alleges that Defendants never interviewed him or asked why he refused meals, nor did they search his cell to determine if he was on a hunger strike or eating his own personal food.

Plaintiff seeks compensatory and punitive damages, along with declaratory and injunctive relief.

### III. Defendants' Motion to Dismiss

#### A. Legal Standards

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim, and dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Conservation Force v. Salazar, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quotation marks and citations omitted). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)) (quotation marks omitted); Conservation Force, 646 F.3d at 1242; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The Court must accept the well-pled factual allegations as true and draw all reasonable inferences in favor of the non-moving party. Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010); Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007); Huynh v. Chase Manhattan Bank, 465 F.3d 992, 996–97 (9th Cir. 2006); Morales v. City of L.A., 214 F.3d 1151, 1153 (9th Cir. 2000). Further, prisoners proceeding *pro se* in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).

///

### 1. Due Process

The Due Process Clause protects Plaintiff against the deprivation of liberty without the procedural protections to which he is entitled under the law. Wilkinson v. Austin, 545 U.S. 209, 221 (2005). To state a claim, Plaintiff must first identify the interest at stake. Wilkinson, 545 U.S. at 221. Liberty interests may arise from the Due Process Clause or from state law. Id. The Due Process Clause itself does not confer on inmates a liberty interest in avoiding more adverse conditions of confinement. Id. at 221–22 (citations and quotation marks omitted), and under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the conditions of confinement at issue. Id. at 222–23 (citing Sandin v. Conner, 515 U.S. 472 (1995). Liberty interests created by prison regulations are generally limited to freedom from restraint which imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Wilkinson, 545 U.S. at 221 (citing Sandin, 515 U.S. at 484) (quotation marks omitted); Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007). If a protected interest is identified, the inquiry then turns to what process is due. Wilkinson, 545 U.S. at 224.

The assignment of validated gang members and associates to the Security Housing Unit is an administrative measure rather than a disciplinary measure, and is "essentially a matter of administrative discretion." Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003) (quoting Munoz v. Rowland, 104 F.3d 1096, 1098 (9th Cir. 1997)). As a result, prisoners are entitled to the minimal procedural protections of adequate notice, an opportunity to be heard, and periodic review. Bruce, 351 F.3d at 1287 (citing Toussaint v. McCarthy, 801 F.2d 1080, 1100–01 (9th Cir. 1986). In addition to these minimal protections, there must be "some evidence" bearing "some indicia of reliability" supporting the decision. Castro v. Terhune, 712 F.3d 1304, 1314 (9th Cir. 2013) (citing Superintendent v. Hill, 472 U.S. 445, 456 (1985) and Bruce, 351 F.3d at 1287).

The administrative determination must meet the "some evidence" standard of Superintendent v. Hill, 472 U.S. 445, 455 (1985); Bruce v. Yst, 351 F.3d at 1287–88. Because the standard for "some evidence" is not high, a court need only decide whether there is any evidence at all that could support the prison officials' administrative decisions. Id. at 1287–88. A reviewing court does not "examine the entire record, independently assess witness credibility, or

reweigh the evidence." Id. at 1287.  However, the evidence supporting the administrative determination must bear "some indicia of reliability."  Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987) (citations omitted).  California regulations requiring three source items for gang validation do not dictate the outcome of the federal due process analysis.  A single piece of evidence that has sufficient indicia of reliability can be sufficient to meet the "some evidence" standard.  Bruce, 351 F.3d at 1288.

### 2. **Retaliation**

A plaintiff may state a claim for a violation of his First Amendment rights due to retaliation under section 1983.  Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).  A viable claim of retaliation in violation of the First Amendment consists of five elements: "(1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005); accord Watison v. Cartier, 668 F.3d 1108, 1114 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

### 3. **Qualified Immunity**

Qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  When considering an assertion of qualified immunity, the court makes a two-pronged inquiry: (1) whether the plaintiff has alleged the deprivation of an actual constitutional right and (2) whether such right was clearly established at the time of defendant's alleged misconduct.  See Pearson v. Callahan, 555 U.S. 223, 232 (2009) (quoting Saucier v. Katz, 535 U.S. 94, 201 (2001)).  "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."  Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011).

"For the second step in the qualified immunity analysis—whether the constitutional right was clearly established at the time of the conduct—the critical question is whether the contours of the right were 'sufficiently clear' that every 'reasonable official would have understood that what

he is doing violates that right.' " Mattos v. Agarano, 661 F.3d 433, 442 (9th Cir. 2011) (quoting al-Kidd, 563 U.S. at 741) (some internal marks omitted). "The plaintiff bears the burden to show that the contours of the right were clearly established." Clairmont v. Sound Mental Health, 632 F.3d 1091, 1109 (9th Cir. 2011). "[W]hether the law was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition." Estate of Ford, 301 F.3d at 1050 (citation and internal marks omitted). In making this determination, courts consider the state of the law at the time of the alleged violation and the information possessed by the official to determine whether a reasonable official in a particular factual situation should have been on notice that his or her conduct was illegal. Inouye v. Kemna, 504 F.3d 705, 712 (9th Cir. 2007); see also Hope v. Pelzer, 536 U.S. 730, 741 (2002) (the "salient question" to the qualified immunity analysis is whether the state of the law at the time gave "fair warning" to the officials that their conduct was unconstitutional). "[W]here there is no case directly on point, 'existing precedent must have placed the statutory or constitutional question beyond debate.' " C.B. v. City of Sonora, 769 F.3d 1005, 1026 (9th Cir. 2014) (citing al-Kidd, 563 U.S. at 740). An official's subjective beliefs are irrelevant. Inouye, 504 F.3d at 712.

### B. Parties' Positions

Defendants assert qualified immunity as to two claims in the second amended complaint: (1) Plaintiff's due process claim relating to his gang revalidation in 2012, and (2) Plaintiff's retaliation claim arising out of his RVR for participation in a 2013 hunger strike. Defendants argue that there was no clearly established right to periodic reviews of lengthy confinement in the SHU in 2012, and it was not clearly established in July 2013 that participating in a hunger strike was protected conduct under the First Amendment.

In opposition, Plaintiff argues that Defendants cannot rely on qualified immunity because their actions violated CDCR's internal policies and regulations, Defendants' motion to dismiss is procedurally defective because it is not based on verified evidence and was filed before Defendants answered the complaint, and that qualified immunity does not bar Plaintiff from proceeding against Defendants in their official capacities for declaratory and injunctive relief. Plaintiff also reiterates his claim that he was retaliated against for participating in group appeals

8

and filing grievances, which, as noted above, is not part of the motion to dismiss. Plaintiff also filed a request for judicial notice and a supplemental declaration, which contains allegations not included in the second amended complaint.[2]

In reply, Defendants argue that Plaintiff's supplemental declaration makes new factual allegations outside the original pleadings that should not be considered with this motion to dismiss. In addition, Defendants contend that they are entitled to qualified immunity because Plaintiff seeks monetary relief, Plaintiff has failed to state an official capacity claim for injunctive relief, Plaintiff's argument about CDCR regulations does not overcome Defendants' qualified immunity, and Plaintiff has again failed to establish that Defendants violated a clearly established right.

### C. Discussion

The undersigned has already determined that Plaintiff has stated cognizable claims under the Due Process Clause and the First Amendment. Thus, taking the allegations of the second amended complaint as true, the Court will focus its analysis on the second prong of the qualified immunity analysis: whether the constitutional right was clearly established at the time of the officer's alleged misconduct. Pearson, 555 U.S. at 232.

Plaintiff claims that in 2012, he was revalidated as a gang member without sufficient evidence, violating his rights under the Due Process Clause. However, while due process requires certain procedural protections at an inmate's *initial* gang validation, it was not clear in 2012 that an inmate had a liberty interest in these protections at a periodic revalidation. Bruce, 351 F.3d at 1287. In fact, it was not until 2014 that the Ninth Circuit concluded that "a lengthy confinement without meaningful review *may* constitute a significant and atypical hardship," and noted that "our case law has not so previously held, and we can cannot hold defendants liable for the violation of a right that was not clearly established at the time the violation occurred." Brown v.

---

[2] Rule 201(b) of the Federal Rules of Evidence provides that a court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). The Court finds it appropriate to take judicial notice of the existence of the federal and state court cases cited by Plaintiff. (See ECF No. 43, pp. 1–2.) The remaining documents submitted are not the type of adjudicative facts that are judicially noticeable. Accordingly, the request for judicial notice is granted in part and denied in part.

Oregon Dep't. of Corrs., 751 F.3d 983, 989–90 (9th Cir. 2014) (prison officials were entitled to qualified immunity with respect to inmate's § 1983 suit for money damages for due-process violation caused by his 27-month confinement in intensive management unit). In 2012, it was therefore not clearly established that Plaintiff had a protected liberty interest in a meaningful six-year inactive review. Plaintiff's argument that Defendants were obligated to comply with CDCR policies and regulations, and that those regulations clearly established his due process rights in this context, is unpersuasive. It is not prison regulations that establish whether or not there is a liberty interest at stake, but rather whether the condition itself "imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (addressing disciplinary segregated confinement). Accordingly, Defendants Gipson, Mayo, Piña, Ortega, and Garcia are entitled to qualified immunity with respect to Plaintiff's due process claim.

Plaintiff next claims that Defendants Johnson, Cuevas, and Hiracheta retaliated against him for participating in a hunger strike in 2013, in violation of the First Amendment. Again, Plaintiff has failed to establish that, in 2013, it was clearly established that a hunger strike was protected conduct under the First Amendment. In Arredondo v. Drager, No. 14-CV-04687-HSG, 2016 WL 3755958 (N.D. Cal. July 14, 2016), the district court faced a claim that defendant officers retaliated against Plaintiff for engaging in hunger strikes and for filing lawsuits against correctional staff. In analyzing qualified immunity, the district court found that the officer was not entitled to qualified immunity with respect to the plaintiff's claim that the officer retaliated against him for his litigation and grievance activity, because those were clearly established rights at the time of the officer's alleged retaliation. However, the court ruled that the officer was entitled to qualified immunity on the plaintiff's claims that he was retaliated against for engaging in a hunger strike, because engaging in a hunger strike in the prison setting was not a clearly established right under the First Amendment. Arredondo, 2016 WL 3755958, at *15–16. The court in Arredondo carefully evaluated case precedent and other persuasive authorities to determine whether engaging in a hunger strike protest is a clearly established right such that an officer would be on notice of such clearly established right. The Arredondo court found that there

was a lack of law addressing whether a hunger strike is protected First Amendment speech, including no binding Supreme Court or Ninth Circuit precedent, and that the handful of district court and out-of-circuit cases analyzing this issue, published and unpublished, are inconsistent and inconclusive.

This Court finds the Arredondo district court's discussion and analysis of the law on this issue to be persuasive and adopts it as if set forth fully herein. Because the law was unsettled in 2013 and remains unsettled, the Court is persuaded that Defendants Johnson, Cuevas, and Hiracheta are entitled to qualified immunity on this claim.

### IV. Conclusion and Recommendation

Accordingly, IT IS HEREBY RECOMMENDED that Defendants' motion to dismiss (ECF No. 39), be GRANTED on the ground that Defendants are entitled to qualified immunity with respect to Plaintiff's claims against Defendants Gipson, Mayo, Piña, Ortega, and Garcia for improper gang revalidation in violation of the Due Process Clause, and against Defendants Johnson, Cuevas, and Hiracheta for retaliating against Plaintiff for participation in a hunger strike in violation of the First Amendment.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, under 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **March 11, 2019**        /s/ *Barbara A. McAuliffe*
　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

12